IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 28, 2018 Session

## POLLY SPANN KERSHAW v. JEFFREY L. LEVY

**Appeal from the Chancery Court for Davidson County**
**No. 07C1757    William B. Acree, Senior Judge**

_____

### No. M2017-01129-COA-R3-CV

_____

This is a legal malpractice case. Appellant filed suit against Appellee, who had previously served as Appellant's attorney in a divorce matter. Appellant alleged that she suffered monetary damages and was convicted of criminal contempt as a result of the negligent legal representation she received from Appellee in her divorce case. Appellee filed a motion for summary judgment claiming that Appellant's claims were, among other things, barred by the doctrine of judicial estoppel as a result of the sworn statements Appellant made in conjunction with her divorce settlement. The trial court agreed and granted summary judgment in favor of Appellee. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, JJ., joined.

Connie Reguli, Brentwood, Tennessee, for the appellant, Polly Spann Kershaw.

Jeffrey John Switzer, Nashville, Tennessee, for the appellee, Jeffrey L. Levy.

### OPINION

### I. FACTS & PROCEDURAL HISTORY

Plaintiff/Appellant Polly Spann Kershaw filed the instant suit against her former attorney, Defendant/Appellee Jeffrey L. Levy, for legal malpractice on June 19, 2007. In November 2006, Ms. Kershaw hired Mr. Levy to represent her in her pending divorce litigation against her then-husband Elliot Kershaw (the "Divorce Case").[1] Mr. Levy

_____

[1]The Divorce Case was filed in the Circuit Court for Davidson County, Tennessee, Case No. 02D291.

represented Ms. Kershaw in the Divorce Case for approximately seven months – from November 2006 through June 2007. Ms. Kershaw was also represented by other attorneys in her Divorce Case, both before and after she was represented by Mr. Levy. At the time Mr. Levy took over representation of Ms. Kershaw, Ms. Kershaw was already in a precarious position in her Divorce Case. Before Mr. Levy's involvement, Ms. Kershaw had been convicted of criminal contempt for incurring marital debt for the purposes of gambling and served approximately one week in jail. Also, at the time Mr. Levy took over Ms. Kershaw's representation, Ms. Kershaw had overdue discovery responses pending and Mr. Kershaw had filed a second petition for criminal contempt against Ms. Kershaw. This pending petition for criminal contempt against Ms. Kershaw appears to have been based on Ms. Kershaw's violation of previous court orders on three occasions by forging checks on Mr. Kershaw's account and using the proceeds for gambling.

After taking over representation of Ms. Kershaw, Mr. Levy prepared a response to Mr. Kershaw's allegations of contempt against Ms. Kershaw, in which Ms. Kershaw admitted she was guilty of the contemptuous activity. On December 8, 2006, the court in the Divorce Case held a hearing on Mr. Kershaw's second petition for criminal contempt and found Ms. Kershaw guilty of three counts of contempt for gambling. As punishment, the court sentenced Ms. Kershaw to thirty (30) days in jail to run consecutively. Ms. Kershaw was taken into custody immediately following the contempt hearing. On December 11, 2006, Mr. Levy appealed Ms. Kershaw's criminal contempt convictions to the Tennessee Court of Appeals, and Ms. Kershaw was released from custody that same day.

Also at the December 8, 2006 hearing, the trial court extended the deadline for Ms. Kershaw to respond to discovery from December 11, 2006 until December 13, 2006. Although Mr. Levy represented to the trial court that he actually deposited Ms. Kershaw's discovery responses in the U.S. mail on December 13, 2006, the responses were not postmarked until December 15, 2006. As a result of this and Ms. Kershaw's previous contemptuous acts, the trial court awarded a default judgment to Mr. Kershaw, struck Ms. Kershaw's pleadings, including her answer and counter-complaint for divorce, decreed that the "facts and claims" asserted by Mr. Kershaw would be taken as true, barred Ms. Kershaw from introducing any defenses against Mr. Kershaw's claims, and awarded attorney's fees to Mr. Kershaw.

Mr. Levy moved to withdraw as counsel for Ms. Kershaw in the Divorce Case on May 16, 2007. Ms. Kershaw filed the case at hand against Mr. Levy for legal malpractice on June 19, 2007. Therein, Ms. Kershaw claimed that Mr. Levy was guilty of legal negligence for failing to timely send Ms. Kershaw's discovery responses and by not properly advising her of her constitutional right against self-incrimination with regard to

2

her criminal contempt proceedings. Ms. Kershaw contended that Mr. Levy's alleged malfeasance resulted in her receiving an inadequate settlement in the Divorce case and her serving approximately three days in jail.

Ms. Kershaw subsequently retained new counsel in the Divorce Case. In November 2007, Ms. Kershaw and Mr. Kershaw attended mediation in the Divorce Case and settled their case in its entirety. Mr. and Ms. Kershaw memorialized their agreement in a Marital Dissolution Agreement, which was entered into on November 19, 2007 (the "MDA"). With respect to the provisions contained in the MDA and the property distributed thereby, Mr. and Ms. Kershaw both agreed as follows:

> Each party represents to the other and acknowledges that this **Agreement is entered into without undue influence, fraud, coercion, or misrepresentation, or for any reason not herein stated**. The provisions in this Agreement and their legal effect are fully known by each of the parties, and each party acknowledges that **the Agreement is fair and equitable and that it is being entered into voluntarily and with the advice of counsel.**

(Emphasis added). The MDA also contained the following provision related to the contempt judgments and sentences against Ms. Kershaw:

> VACATION OF ALL CONTEMPT JUDGMENTS AND CONTEMPT SENTENCES AND DISMISSAL OF APPEAL. All contempt judgments and contempt sentences currently in effect against Ms. Kershaw shall be vacated, made void and no longer of any force in effect; and the Court shall find that there is no current contempt judgment outstanding against Ms. Kershaw and no current sentence for any such contempt current or pending against Ms. Kershaw. To carry out the intent of this provision, the parties, upon entry of the Final Decree of Divorce incorporating into this Marital Dissolution Agreement, shall file a joint motion in the Tennessee Court of Appeals requesting that the Tennessee Court of Appeals dismiss the current appeal of Ms. Kershaw with costs taxed to Ms. Kershaw and with any further ordering or instruction, if needed, which is consistent with the parties agreement and the terms of this paragraph. A supplemental order may be entered by the trial court to insure the aforementioned court finding once the appeal is dismissed.

Mr. and Ms. Kershaw signed the MDA, and their signatures were notarized by a notary public who verified that the parties, "after being duly sworn, acknowledged that [they] executed the foregoing Agreement for the purposes contained therein." The trial court

approved the MDA on November 21, 2007, and incorporated it by reference into the final divorce decree.

In this malpractice case, Mr. Levy filed an answer to Ms. Kershaw's complaint and a counter-complaint against Ms. Kershaw on February 7, 2008, alleging that she still owed him legal fees in the amount of $13,983.78 plus pre-judgment interest.[2] On March 1, 2017, Mr. Levy filed a motion for summary judgment contending that Ms. Kershaw should be judicially estopped from claiming in the malpractice case that her damages from Mr. Levy's negligence resulted from an inequitable settlement agreement with Elliot Kershaw when she previously claimed under oath that the settlement had been equitable. Further, Mr. Levy argued that Ms. Kershaw should not be allowed to pursue any malpractice claim against him based on her criminal contempt convictions because they had been vacated and she voluntarily relinquished her right to pursue any post-conviction relief related to them in the MDA. Ms. Kershaw responded in opposition to the motion for summary judgment, asserting the damage resulting from Mr. Levy's alleged negligence left her with no bargaining power in her settlement negotiations with Mr. Kershaw, and the fact that she entered into an agreement several months after Mr. Levy's involvement that stated the settlement with Mr. Kershaw was fair and equitable was irrelevant.

The trial court granted Mr. Levy's motion on May 1, 2017, finding that there were no genuine issues of material fact for a jury to decide and that Ms. Kershaw's legal arguments failed as a matter of law. Among other things, the trial court held that Ms. Kershaw was judicially estopped from claiming that she was damaged by receiving an inadequate settlement in the Divorce Case when she had sworn in the MDA that her settlement was fair and equitable. Further, the MDA served to vacate criminal contempt findings and sentences against Ms. Kershaw, and she agreed to dismiss her appeal of the criminal contempt findings. The trial court determined that this precluded Ms. Kershaw from subsequently seeking damages in her legal malpractice case based on the results of the contempt proceeding. On May 4, 2017, an order of voluntary dismissal was entered on Mr. Levy's counter-claim against Ms. Kershaw. Ms. Kershaw timely filed a notice of appeal on June 2, 2017.

## II. ISSUES PRESENTED

Ms. Kershaw presents the following issues, as slightly reworded, for review on appeal:

---

[2]There is a considerable amount of procedural history in this case that spanned the course of approximately nine years, including bankruptcy filings and a substantial amount of discovery. Much of this, however, is not relevant to the outcome of this appeal and will therefore not be discussed herein.

1. Whether the trial court erred in dismissing Ms. Kershaw's case on summary judgment findings that she had an insufficient claim for damages and in reliance on the doctrine of judicial estoppel?

2. Whether the trial court erred in failing to disqualify Mr. Levy's expert witness, Judge Muriel Robinson?

3. Whether the trial court erred in bifurcating the case, which denied Ms. Kershaw a jury trial on all issues?

Mr. Levy presents the following additional issues for review on appeal:

4. [Whether] the trial court erred in failing to completely disqualify [Ms. Kershaw's] expert witness, T. Verner Smith? However, the trial court properly prohibited Mr. Smith from giving certain testimony pursuant to the Order entered on April 17, 2017.

5. [Whether] the trial court erred in refusing to grant Mr. Levy's 2013 motion for summary judgment on the issue of estoppel in the context of multiple sworn statements made by [Ms. Kershaw] in two bankruptcy proceedings?

## III. STANDARD OF REVIEW

We review a trial court's ruling on a motion for summary judgment de novo without a presumption of correctness. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). When a motion for summary judgment is properly supported as provided in Tennessee Rule of Civil Procedure 56, in order to survive summary judgment, the nonmoving party may not rest upon the mere allegations or denials of its pleading but must respond, and by affidavits or one of the other means provided in Rule 56, set forth specific facts at the summary judgment stage showing that there is a genuine issue for trial. *Id.* at 265. "Summary judgment should be granted if the nonmoving party's evidence at the summary judgment stage is insufficient to establish

the existence of a genuine issue of material fact for trial." *Id.* (citing Tenn. R. Civ. P. 56.04, 56.06).

## IV. DISCUSSION

The first issue raised by Ms. Kershaw is the propriety of the trial court's decision to grant summary judgment in favor of Mr. Levy based upon "finding[s] that she had an insufficient claim for damages and in reliance on the doctrine of judicial estoppel."[3]  A trial court's application of the doctrine of judicial estoppel is a question of law and is reviewed *de novo* on appeal. *See State ex rel. Kimbrough v. Hales*, No. E2011-02539-COA-R3-CV, 2012 WL 3025712, at *6 (Tenn. Ct. App. July 25, 2012) (citing *Carvell v. Bottoms,* 900 S.W.2d 23, 30 (Tenn.1995); *Terrell v. Terrell,* 200 Tenn. 289, 295-96, 292 S.W.2d 179, 182 (1956); *Bubis v. Blackman,* 58 Tenn. App. 619, 632-33, 435 S.W.2d 492, 498 (1968)).  This Court has explained the doctrine of judicial estoppel as follows:

> The distinctive feature of the Tennessee law of judicial estoppel (or estoppel by oath) is the expressed purpose of the court, or broader grounds of public policy to uphold the sanctity of the oath.  The sworn statement is not merely evidence against the litigant, but (unless explained) precludes him from denying its truth.  It is not merely an admission but an absolute bar.

*Terox Corp. of Am. v. Carr*, 376 S.W.2d 735, 738-39 (Tenn. Ct. App. 1964) (citing *Sartain v. Dixie Coal & Iron Co.*, 266 S.W. 313 (Tenn. 1924)).  "The doctrine of judicial estoppel seeks to ensure that parties do not 'play[ ] fast and loose with the courts' by contradicting a previous sworn statement or testimony." *Schutt v. Miller*, W2010-02313-COA-R3-CV, 2012 WL 4497813, at *11 (Tenn. Ct. App. Sept. 27, 2012) (quoting *Woods v. Woods,* 638 S.W.2d 403, 406 (Tenn. Ct. App. 1982)).  Our Tennessee Supreme Court also opined that the doctrine of judicial estoppel is proper when a party is attempting to take a position contrary to a position previously taken <u>under oath</u>:

> [W]e take this opportunity to clarify that the doctrine of *judicial* estoppel is applicable only when a party has attempted to contradict by oath a sworn statement previously made. *See Allen v. Neal,* 217 Tenn. 181, 396 S.W.2d 344, 346 (1965) (noting that "[j]udicial estoppels arise from sworn statements made in the course of judicial proceedings, generally in a former litigation, and are based on public policy upholding the sanctity of an oath and not on prejudice to adverse party by reason thereof, as in the case of equitable estoppel").

---

[3]This is the issue on appeal as phrased by Ms. Kershaw.

*Cracker Barrel Old Country Store, Inc. v. Epperson,* 284 S.W.3d 303, 315 (Tenn. 2009).

In the present case, Ms. Kershaw swore under oath that her settlement in the Divorce Case was <u>fair and equitable</u>, that she entered into the MDA voluntarily and with the advice of counsel, and that she was not under any form of fraud, coercion, undue influence, or misrepresentation. She also swore that she was not entering into the MDA as a result of <u>any other reason</u> not stated therein. She now seeks damages against Mr. Levy for allegedly receiving an <u>inequitable</u> settlement with her ex-husband – a position that is diametrically opposed to her representations under oath in the Divorce Case.

Ms. Kershaw's defense to the application of judicial estoppel is essentially that she only stated in the MDA that the settlement agreement was "fair and equitable" because her negotiating power had been severely diminished as a result of Mr. Levy's prior conduct. In support of her position, Ms. Kershaw relies on the case of *Parnell v. Ivy*, 158 S.W.3d 924 (Tenn. Ct. App. June 7, 2004). In *Parnell*, the plaintiff brought a legal malpractice case against her former attorneys for allowing the statute of limitations to run out on a wrongful death case she filed against the City of Trenton, Tennessee, pursuant to the Tennessee Governmental Tort Liability Act (TGTLA). *See Parnell*, 158 S.W. 3d at 925. In that case, the trial court held that the plaintiff's settlement with the City of Trenton on the basis of a section 1983 claim barred her from seeking damages against her former attorneys on her TGTLA claim because the damages she sought were the same under both theories of liability. *See id.* This Court reversed the trial court, holding that "the damages sought in the legal malpractice lawsuit are separate and distinct from the damages sought in the underlying lawsuit, and therefore settlement of the underlying lawsuit does not shield the former attorneys from liability." *Id.* *Parnell* is distinguishable from the case at bar because it turned on the issue of damages – not judicial estoppel. The defendants in *Parnell* attempted to rely on the release of one party in the underlying case as a defense to their malpractice, arguing that recovery in the legal malpractice case as well as the underlying case would result in double recovery for the plaintiff. *Id.* Nothing in the *Parnell* case discusses any prior testimony of the plaintiff or that she unequivocally stated that what she received was a fair and equitable settlement. Again, the *Parnell* case did not turn on the theory of judicial estoppel.

We determine, however, that the elements of judicial estoppel are present in this case. Ms. Kershaw made a sworn statement in a judicial proceeding – the MDA in the Divorce Case − in which she swore that the settlement she was entering into with Mr. Kershaw was fair and equitable. We agree with the trial court that Ms. Kershaw cannot now take a contrary position and seek damages against Mr. Levy by alleging that the settlement was not fair and equitable. We also note that the instant malpractice case was filed by Ms. Kershaw on June 19, 2007, which was five months before she entered into an MDA in the Divorce case on November 19, 2007. Although Ms. Kershaw's

complaint was already filed in the malpractice action, she made no caveats and did not include any language in her MDA to the effect that she was entering the settlement agreement as a result of Mr. Levy's malpractice or that the settlement was only fair and equitable under the circumstances given her decreased bargaining power.

With respect to Ms. Kershaw's convictions for criminal contempt, we again agree with the trial court's conclusion that Ms. Kershaw is without recourse against Mr. Levy. Ms. Kershaw was found in contempt by the trial court for forging checks and using the proceeds to gamble. In the MDA, Ms. Kershaw was not only relieved of "[a]ll contempt judgments and contempt sentences currently in effect," but she also agreed to forego any right to appeal the merits of her criminal contempt convictions. To that end, on November 25, 2007, Mr. and Ms. Kershaw entered a stipulation for voluntary dismissal of the appeal of the criminal contempt conviction. Much of the trial court's reasoning for holding Ms. Kershaw in contempt in November 2006 was her testimony that she engaged in the contemptuous conduct of which she was accused. She may not now, particularly in light of her failure to appeal the conviction, assert that she was not guilty of this conduct and attempt to recover damages from Mr. Levy on this basis.

Although both parties raise additional issues on appeal, we determine that all of those issues are pretermitted in light of our conclusion that summary judgment in favor of Mr. Levy was proper. The judgment of the trial court is, therefore, affirmed in all respects.

## IV. CONCLUSION

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are taxed to the appellant, Polly Spann Kershaw. Because Polly Spann Kershaw is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

_____
BRANDON O. GIBSON, JUDGE

8